Laurence M. Rosen, Esq. (SBN 219683)
**THE ROSEN LAW FIRM, P.A.**
355 South Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
esams@glancylaw.com

*Co-Lead Counsel for Plaintiffs*

[*Additional counsel listed on signature page*]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANINDRA KUMAR, Individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>KULICKE AND SOFFA INDUSTRIES, INC., FUSEN CHEN, and JONATHAN CHOU,<br><br>Defendants. | Case No. 2:18-cv-3969-R-FFMx<br><br>**AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>CLASS ACTION<br><br>JURY TRIAL DEMANDED |

Lead Plaintiffs Thomas Walsh and Dennis Dandeles ("Plaintiffs"), individually and on behalf of all other persons similarly situated, allege the following based upon personal knowledge as to their own acts, and upon information and belief as to all other matters, based upon the investigation conducted by Lead Counsel which included, among other things, a review of Defendants' public documents, conference calls and announcements made by Defendants, United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Kulicke and Soffa Industries, Inc. ("Kulicke" or the "Company"), analysts' reports and advisories about the Company, interviews with confidential witnesses, and information readily obtainable on the Internet. Plaintiffs believe that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action brought on behalf of a class consisting of all persons and entities, other than Defendants and their affiliates, who purchased or otherwise acquired publicly-traded securities of Kulicke from November 16, 2017 through May 10, 2018, inclusive (the "Class Period"), seeking to recover compensable damages caused by Defendants' violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") (the "Class").

2. Kulicke is a Singapore-based global company that designs, manufactures, and sells capital equipment and expendable tools to assemble semiconductor devices.

3. In May 2018, Kulicke revealed that it would need to restate its financial reports due to misappropriations discovered at the Company.

4. Specifically, Kulicke revealed that it had identified unauthorized payments initiated by an unnamed "senior finance employee" in the first and second

quarters of the Company's 2018 fiscal year. The payments were made through a "management override of controls," resulting in falsified accounting records where ***manual journal entries totaling over $5.8 million*** had been inaccurately recorded.

5. The Company determined that these unauthorized payments and falsified accounting records were a "misappropriation," and that they constituted a material weakness in internal control over financial reporting not previously disclosed to the public.

6. Due to the nature of these misappropriations and material weaknesses in internal controls, Defendants clearly knew, or were deliberately reckless in not knowing about the falsified multi-million-dollar manual journal entries.

7. As a result, the Company's stock price dropped $1.80, or over 7.5%, damaging investors.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and §78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §1331 and §27 of the Exchange Act.

10. Venue is proper in this judicial district pursuant to §27 of the Exchange Act (15 U.S.C. §78aa) and 28 U.S.C. §1391(b) as the Company conducts business and maintains offices within this judicial district.

11. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail, interstate telephone communications and the facilities of the national securities exchange.

## PARTIES

12. Lead Plaintiff Thomas Walsh, as set forth in his certification previously filed with the Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), incorporated by reference herein, acquired Kulicke securities at artificially-inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

13. Lead Plaintiff Dennis Dandeles, as set forth in his PSLRA certification previously filed with the Court, incorporated by reference herein, acquired Kulicke securities at artificially-inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

14. Defendant Kulicke is a Singapore-based company incorporated in Pennsylvania, which designs, manufactures, and sells capital equipment and expendable tools to assemble semiconductor devices. Kulicke's headquarters are located at 23A Serangoon North Avenue 5, #01-01, Singapore 554369. The Company maintains offices in Santa Ana, California, and Fort Washington, Pennsylvania, among other locations worldwide. Kulicke securities trade on the NASDAQ under the ticker symbol "KLIC."

15. Defendant Fusen Chen has been the Company's President and Chief Executive Officer ("CEO") since October 31, 2016. He also serves as a director of the Company.

16. Defendant Jonathan Chou served as the Company's Chief Financial Officer ("CFO") from December 13, 2010 to November 27, 2017, and Principal Accounting Officer from October 4, 2015 to November 27, 2017. Chou is a resident of California. On November 27, 2017, the Company announced that Chou was stepping down as the Company's Executive Vice President, CFO, and Principal Accounting Officer effective immediately, but that he would remain with the Company until February 28, 2018. According to S&P Global Markets Intelligence,

Chou was Asia's 25th best-paid CFO when he left the Company. Chou left the Company on February 28, 2018 and joined Nanometrics as CFO on March 5, 2018. On June 25, 2018, Nanometrics announced that Chou "would cease to be an officer and employee of Nanometrics," effective immediately.

17. Defendants Chen and Chou are sometimes referred to herein as the "Individual Defendants."

18. Each of the Individual Defendants:

a. directly participated in the management of the Company;
b. was directly involved in the day-to-day operations of the Company at the highest levels;
c. was privy to confidential proprietary information concerning the Company and its business and operations;
d. was directly or indirectly involved in drafting, producing, reviewing and/or disseminating the false and misleading statements and information alleged herein;
e. was directly or indirectly involved in the oversight or implementation of the Company's internal controls;
f. was aware of or recklessly disregarded the fact that the false and misleading statements were being issued concerning the Company; and/or
g. approved or ratified these statements in violation of the federal securities laws.

19. Kulicke is liable for the acts of the Individual Defendants and its employees under the doctrine of *respondeat superior* and common law principles of agency as all of the wrongful acts complained of herein were carried out within the scope of their employment with authorization.

20. The scienter of the Individual Defendants and other employees and agents of the Company is similarly imputed to Kulicke under *respondeat superior* and agency principles.

21. Defendant Kulicke and the Individual Defendants are referred to herein, collectively, as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Materially False and Misleading Statements

22. On November 16, 2017, Kulicke filed an annual report on Form 10-K for the fiscal year ended September 30, 2017 (the "2017 10-K") with the SEC, which provided the Company's annual financial statements and position. The 2017 10-K was signed by Defendants Chen and Chou.

23. The 2017 10-K contained certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") signed by Defendants Chen and Chou attesting to the accuracy of the 2017 10-K. Chen and Chou each certified that the 2017 10-K "does not contain any untrue [or misleading] statement of a material fact." Chen and Chou also each certified that they disclosed to Kulicke's auditor and audit committee: (1) "[a]ll significant deficiencies and material weaknesses in the design or operation of internal control over financial reporting"; and (2) "[a]ny fraud, whether or not material, that involves management or other employees who have a significant role in the registrant's internal control over financial reporting."

24. The 2017 10-K stated that "[t]he management of Kulicke and Soffa Industries, Inc. (the "Company") is responsible for establishing and maintaining adequate internal control over financial reporting," and that "management has concluded that, as of September 30, 2017, the Company's internal control over financial reporting was effective."

25. These statements were false or misleading because: (1) as of September 30, 2017, the Company did not maintain effective controls over the

recording and review of manual journal entries, constituting a material weakness in the Company's internal control over financial reporting; and (2) in the first and second fiscal quarters of 2018, a "senior finance employee" made unauthorized payments based on falsified accounting records in the form of manual journal entries, totaling at least $5.8 million, which conduct the Company deemed a "misappropriation"; and (3) the falsified manual journal entries were recorded due to management override of controls.

**<u>The Truth Begins to Emerge</u>**

26. On May 10, 2018, after market-close, Kulicke issued a press release which disclosed that it would not be filing its Quarterly Report with the SEC in a timely manner due to an investigation into "certain unauthorized transactions by a senior finance employee of the Company" and the discovery that "certain warranty accruals in prior periods had been accounted for incorrectly and therefore [were] misstated." The press release states, in relevant part:

> ***SINGAPORE - May 10, 2018*** - Kulicke & Soffa Industries, Inc. (NASDAQ: KLIC) ("Kulicke & Soffa", "K&S" or the "Company"), announced today that it will not be filing its Quarterly Report on Form 10-Q with the SEC in a timely manner. ***Following the end of the fiscal quarter, the Company learned of certain unauthorized transactions by a senior finance employee of the Company.*** The Company has undertaken an investigation of these transactions with the assistance of outside advisors. In the course of this investigation, the Company discovered that certain warranty accruals in prior periods had been accounted for incorrectly and therefore misstated. The Board of Directors of the Company has therefore determined that the Company's previously issued consolidated financial statements for the fiscal year ended September 30, 2017 can no longer be relied upon due to the misstated warranty accruals made in prior periods.

[Emphasis added].

27. On this news, the Company's shares fell $1.80, or over 7.5%, on unusually high volume to close at $21.99 on May 11, 2018, damaging investors.

28. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities Plaintiffs and other Class members have suffered significant losses and damages.

**The Bogus Transactions**

29. On May 30, 2018, Kulicke filed an amended current report on Form 8-K/A ("May 30 8-K/A") with the SEC, amending the 8-K filed by the Company on May 10, 2018 which included the press release from the same date.

30. In the May 30 8-K/A, the Company stated that, in connection with its review of the matters discussed in the May 10, 2018 press release:

> [T]he Company identified an unauthorized payment that had been initiated by a senior finance employee to an unapproved vendor in the second fiscal quarter of fiscal 2018. The payment was made based on falsified accounting records where two manual journal entries totaling $5.8 million in the aggregate had been recorded in accounts payable and cost of sales. Management has determined this to be a misappropriation of the Company's assets.

31. The Company also stated in the May 30 8-K/A that:

> "the Company's management also concluded on May 28, 2018 that … (i) effective controls over the recording and review of manual journal entries related to our warranty accrual was not maintained as of September 30, 2017 and journal entries related to our warranty accrual and accounts payable was not maintained as of December 30, 2017."

32. On May 31, 2018, Kulicke filed an amended annual report on Form 10-K/A for the fiscal year ended September 30, 2017 (the "2017 10-K/A") with the SEC. In the 2017 10-K/A, the Company stated that:

> [O]ur management previously had concluded that we maintained effective internal control over financial reporting as of September 30, 2017. Management subsequently has concluded that the material weakness described below existed as of September 30, 2017. As a result, management has concluded that the Company did not maintain

effective internal control over financial reporting as of September 30, 2017.

33. The 2017 10-K/A also stated that:

> ***We did not maintain effective controls over the recording and review of manual journal entries related to our warranty accrual. Specifically, effective control over review of journal entries was not maintained as a result of management override of journal entries of the accrual for warranty***. The management override of controls was identified during an internal investigation, which was concluded in May 2018, ***related to an unauthorized disbursement by a senior finance employee*** that was discovered after the end of the second fiscal quarter of 2018. We determined that manual journal entries, initiated by this employee were made to correct the Company's failure to properly include labor costs in our warranty accrual, lacked supporting documentation and were accounted for incorrectly. This control deficiency resulted in the misstatement of our warranty expense and warranty accrual accounts and related financial disclosures, and in the restatement of the Company's consolidated financial statements for the fiscal years ended September 30, 2017 and October 1, 2016. Additionally, this control deficiency could result in additional misstatements of account balances or disclosures that would result in a material misstatement to the annual or interim consolidated financial statements that would not be prevented or detected. ***Accordingly, our management has determined that this control deficiency constitutes a material weakness.***

34. On May 31, 2018, Kulicke also filed an amended quarterly report on Form 10-Q/A for the first quarter of fiscal 2018, the period ending December 31, 2017, ("18Q1 10-Q/A") with the SEC.

35. The 18Q1 10-Q/A stated that in addition to the $5.8 million misappropriation in the second quarter of fiscal 2018, "there are payments made to another vendor based on falsified accounting records by the aforementioned senior finance employee in ***first quarter*** of fiscal 2018."

36. The 18Q1 10-Q/A also stated that "The Company is in the process of assessing its plan for remediation of the material weaknesses. Such plan is expected to include change in personnel, including within finance leadership."

**<u>Chou is Forced Out of the Company</u>**

37. On November 27, 2017, the Company issued a press release announcing that Chou "has stepped down" as Executive Vice President, CFO, and Principal Accounting Officer, effective immediately, "to spend more time with his family and to pursue other interests." According to the press release, Chou would be remaining with the Company until February 28, 2018. Kulicke named Lester Wong, the Company's longtime General Counsel, as interim CFO.

38. Chou did indeed leave the Company on February 28, 2018. Five days later, on March 5, 2018, he joined Nanometrics, Inc. as their CFO. On June 28, 2018, less than four months later, Nanometrics announced that "[o]n June 25, 2018, Nanometrics Incorporated informed Jonathan H. Chou, Nanometrics' Chief Financial Officer, that Mr. Chou would cease to be an officer and employee of Nanometrics. Mr. Chou's last day of employment was June 25, 2018."

39. Upon information and belief, the unnamed "senior finance employee" responsible for the "management override of controls" to falsify accounting records in the form of manual journal entries, resulting in a "misappropriation" of at least $5.8 million was Chou. Even if Chou was not the "senior finance employee," he necessarily must have known of, or recklessly disregarded, the falsified accounting records. The basis for this belief is as follows.

40. Chou was a "senior finance employee" during the relevant time periods, as well as "management" in a position to override Kulicke's accounting controls.

41. The falsified records at issue were manual journal entries, and they amounted to over $5.8 million that was misappropriated. This suggests that the

unnamed employee must have had the highest levels of discretion, access, and lack of oversight. As CFO, Chou fit the bill.

42. The number of employees who were, at the relevant time, "senior," "finance employees," in "management," who had discretion, access and lack of oversight necessary in order to falsify manual journal entries for over $5.8 million is extremely limited. Chou matches each of these descriptors. To the extent that someone else at Kulicke, fitting the narrow criteria, directly committed the misappropriations, Chou still had oversight and ultimate discretion over multi-million-dollar manual journal entries and either must have known, or was deliberately reckless in not knowing, about the misconduct.

43. Furthermore, the circumstances of Chou's departure from Kulicke and his quick dismissal from his next employer support the inference that Chou was the unnamed "senior finance employee." The fact that Chou joined Nanometrics only five days after his departure from Kulicke, which was ostensibly for Chou "to spend more time with his family and to pursue other interests," suggests that Chou was effectively fired upon the Company discovering his misconduct. The fact that Chou was abruptly terminated as CFO of Nanometrics after less than four months, without explanation, supports the inference that either: (1) Nanometrics learned of Chou's malfeasance at Kulicke; or (2) Chou may have committed some type of misconduct at Nanometrics, suggesting he may have done likewise at Kulicke.

## PLAINTIFFS' CLASS ACTION ALLEGATIONS

44. Plaintiffs bring this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Kulicke securities publicly traded on NASDAQ during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their

immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

45. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Kulicke securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time and can be ascertained only through appropriate discovery, Plaintiffs believe that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Kulicke or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

46. Plaintiffs' claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

47. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel competent and experienced in class and securities litigation. Plaintiffs have no interests antagonistic to or in conflict with those of the Class.

48. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

a. whether the Exchange Act was violated by Defendants' acts as alleged herein;

b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Kulicke;

c. whether the Individual Defendants caused Kulicke to issue false and misleading financial statements during the Class Period;

d. whether Defendants acted knowingly or recklessly in issuing false and misleading SEC filings;

e. whether the prices of Kulicke securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

f. whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

49. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

50. In addition, Plaintiffs and the Class are entitled to a presumption of reliance on Defendants' material misrepresentations pursuant to the fraud-on-the-market theory, because Kulicke's common stock traded in an efficient market during the Class Period, in that:

a. Throughout the Class Period, Kulicke's common stock shares met the requirements for listing, and were listed and actively traded on the NASDAQ, a highly efficient and automated market, throughout the Class Period. Kulicke shares were highly liquid during the Class Period;

b. As a regulated issuer, Kulicke filed periodic public reports with the SEC and the NASDAQ;

c. The Company regularly communicated with public investors by means of established market communication mechanisms, including through regular dissemination of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services;

d. On average, approximately 3.2 million Kulicke shares, or 4.5% of Kulicke's total shares outstanding, were traded weekly, permitting a very strong presumption that its shares traded on an efficient market;

e. The market reacted promptly to public information disseminated by the Company, as new, Company-specific information was rapidly reflected in the price of Kulicke's shares;

f. As an NASDAQ-traded stock, Kulicke had a designated market maker which made a market in Kulicke's shares; and

g. The misrepresentations and omissions alleged herein would tend to induce a reasonable investor to misjudge the value of the Company's securities.

51. Based upon the foregoing, the market for Kulicke securities promptly digested current information regarding Kulicke from all publicly-available sources and reflected such information in the prices of the shares, and Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

52. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

**COUNT I**

**Violation of Section 10(b) of The Exchange Act and SEC Rule 10b-5**
**Against All Defendants**

53. Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

54. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and SEC Rule 10b-5 promulgated thereunder.

55. During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Kulicke securities; and (iii) cause Plaintiffs and other members of the Class to purchase or otherwise acquire Kulicke securities at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

56. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Kulicke

securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Kulicke's finances and business prospects.

57. By virtue of their positions at Kulicke, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

58. Evidence showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Kulicke, the Individual Defendants had knowledge of the details of Kulicke's internal affairs.

59. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Kulicke. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Kulicke's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Kulicke securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Kulicke's business and

financial condition which were concealed by Defendants, Plaintiffs and the other members of the Class purchased or otherwise acquired Kulicke securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

60. During the Class Period, Kulicke securities were traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Kulicke securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Kulicke securities was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Kulicke securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

61. By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

62. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

**COUNT II**

**Violation of Section 20(a) of the Exchange Act**
**Against the Individual Defendants**

63. Plaintiffs repeat and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

64. During the Class Period, the Individual Defendants participated in the operation and management of Kulicke, and conducted and participated, directly and indirectly, in the conduct of Kulicke's business affairs. Because of their senior positions, they knew the adverse non-public information about Kulicke's current financial position and future business prospects.

65. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Kulicke's business practices, and to correct promptly any public statements issued by Kulicke which had become materially false or misleading.

66. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Kulicke disseminated in the marketplace during the Class Period concerning the Company's business, operational and accounting policies. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Kulicke to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of Kulicke within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Kulicke securities.

67. Each of the Individual Defendants, therefore, acted as a controlling person of Kulicke. By reason of their senior management positions and/or being directors of Kulicke, each of the Individual Defendants had the power to direct the

actions of, and exercised the same to cause, Kulicke to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Kulicke and possessed the power to control the specific activities which comprise the primary violations about which Plaintiffs and the other members of the Class complain.

68. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Kulicke.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A. Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiffs as the Class representatives;

B. Requiring Defendants to pay damages sustained by Plaintiffs and the Class by reason of the acts and transactions alleged herein;

C. Awarding Plaintiffs and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D. Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiffs hereby demand a trial by jury.

Dated: October 24, 2018

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/Laurence M. Rosen
Laurence M. Rosen (SBN 219683)
355 S. Grand Avenue, Suite 2450
Los Angeles, CA 90071
Telephone: (213) 785-2610
Facsimile: (213) 226-4684
Email: lrosen@rosenlegal.com

**THE ROSEN LAW FIRM, P.A.**
Joshua Baker (admitted *pro hac vice*)
101 Greenwood Avenue, Suite 440
Jenkintown, PA 19046
Telephone: (215) 600-2817
Facsimile: (212) 202-3827

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay (SBN 270796)
Ex Kano S. Sams II (SBN 192936)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com

*Co-Lead Counsel for Plaintiffs*